FILED

2024 Apr-25  AM 09:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## WESTERN DIVISION

| | | |
|---|---|---|
| Pamela A. Ajoloko, | ) | |
| *Pro Se* Plaintiff, | ) | |
| | ) | |
| v. | ) | 7:23-cv-00177-LSC |
| | ) | |
| Jamas Technology, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF OPINION**

Plaintiff Pamela A. Ajoloko ("Ajoloko") brings this action against her former employer, Jamas Technology ("Jamas"). Ajoloko asserts claims for "Racial Discrimination," "Discrimination Based on Age – Disparate Treatment," "Discrimination Based on Disability," and "Retaliation." (Doc. 21.) Her claims arise under Title VII, § 1981, the Americans with Disabilities Act ("ADA"), and the Age Discrimination in Employment Act ("ADEA").

Jamas has moved for summary judgment. (Doc. 38.) The issues have been fully briefed by the parties and are ripe for review. For the reasons explained below, this Motion is due to be granted.[1]

---

[1] On April 23, 2024, after briefing for Jamas's Motion for Summary Judgment was concluded, Ajoloko filed another "Amended Complaint," which added no additional facts or legal theories. (Doc. 53.) Accordingly, this additional Amended Complaint is struck.

## I.   FACTS AND PROCEDURAL BACKGROUND[2]

"Jamas is a general contract labor company." (Doc. 39-1 ¶ 4 n.1.) Ajoloko is an African American woman over forty years old who worked for Jamas from April 2021 until December 2021. (Doc. 1-1 at 5; Doc. 37 at 2 ¶¶ 1, 11; Doc. 39-3 at 13; Doc. 39-4 at 50.) While employed at Jamas, Ajoloko held various roles, such as bus driver, spotter, and security guard at property that was owned and operated by Warrior Met Coal ("Warrior Met"). (Doc. 37 at 2 ¶ 2.) All of these positions were subject to Jamas's temporary contract with Warrior Met. (Doc. 39-1 ¶ 4.)

Ajoloko directs the Court to several events that occurred during her employment with Jamas. The first event occurred on August 8, 2021 when Ajoloko, while operating one of Jamas's buses, dropped her cell phone in an area occupied by a labor strike. (Doc. 37 ¶ 6; Doc. 21 ¶ 15; Doc. 39-1 ¶ 7.) When Ajoloko returned to Jamas's office, her supervisor, Rebeka Sellers-Langston ("Sellers" or "Sellers-

---

[2] Ajoloko did not comply with the Court's Uniform Order, which required that she separately dispute each of Jamas's "Undisputed Facts" in separately numbered paragraphs and then provide an additional section of "Additional Undisputed Facts" in separately numbered paragraphs. (Doc. 7 at 15–17.) Technically, her failure to meet this obligation would amount to waiving any dispute to Jamas's "Undisputed Facts." (*Id.* at 16–20.); *see Loren v. Sasser*, 309 F.3d 1296, 1304 (11th Cir. 2002) (explaining that *pro se* plaintiffs must "conform to procedural rules"). However, as Ajoloko proceeds *pro se*, the Court will nonetheless consider her "Statement of Facts" section in conjunction with Jamas's submitted facts and the facts evidenced by the record. Accordingly, the facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Langston"), did not allow Ajoloko to retrieve her phone but sent two other individuals to retrieve the phone. (Doc. 37 ¶ 6; Doc. 39-1 ¶ 7; Doc. 42 at 2.)

The next event occurred on August 10, 2021 when Sellers-Langston assigned Ajoloko to drive a bus with Lynn Benefield as her spotter. (Doc. 39-1 ¶ 9.) Ajoloko claims that Benefield exhibited Covid-19 symptoms, and Ajoloko requested time off to receive a test. (Doc. 21 ¶ 16.) Sellers-Langston told Ajoloko that she would not be paid for taking time off. (Doc. 39-6.)

Next, Ajoloko raises claims regarding Jamas's timesheet practices. On August 11, 2021, Rita Mabe, an assistant supervisor, changed Ajoloko's sign-in time on the timesheets at Sellers-Langston's direction. (Doc. 21 ¶ 17; Doc. 39-1 ¶ 12.) Ajoloko admits that it was her practice to arrive to work early and to sign in. (Doc. 42 at 3; Doc. 21 ¶ 17.) Because arriving more than a half hour early violated both Jamas's and Warrior Met's policy (Doc. 39-1 ¶ 11), Ajoloko received a verbal reprimand and later a formal write-up for the continued behavior. (Doc. 39-7; Doc. 39-8.) On August 30, 2021, Ajoloko was suspended without pay for six days for this behavior. (Doc. 39-9; Doc. 37-1 ¶ 13.)

After being disciplined for the timesheet incidents, Warrior Met security guards were involved in escorting Ajoloko off the premises. (Doc. 39-1 ¶ 14; Doc. 21 ¶ 17.) Ajoloko complained to Jamas's Owner, Ray Wilson, about Sellers-Langston following this incident. (Doc. 21 ¶ 17.)

Ajoloko's next major complaint involved Jamas requiring her to take a drug test. On September 7, 2021, Phillip Saunders, Vice President of Warrior Met, texted Seller-Langston about a reported bus crash on-site and instructed her to conduct a drug test if damage occurred. (Doc. 39-10.) Jamas then began testing employees by alphabetical order. (Doc. 39-1 ¶ 14.) Ajoloko complained to Wilson about the testing. (Doc. 21 ¶ 19.)

Warrior Met and Jamas required the employees to undergo hair follicle testing. (Doc. 39-1 ¶ 15.) Ajoloko did not undergo this testing, as she is bald. (Doc. 39-1 ¶ 17; Doc. 42 at 3.) Ajoloko did submit to a urinalysis, which was negative. (*Id.* at 10.) However, because she did not undergo the hair follicle testing, Jamas determined she "failed" the drug test. (Doc. 39-1 ¶ 17.)[3]

Ajoloko's next complaints concern scheduling. She alleges: "Sellers assigned employees' hours and responsibilities in a discriminatory manner. She routinely placed elderly, African-American drivers last in line to transport other workers and gave preference to Caucasian drivers." (Doc. 21 ¶ 14.) She further believes that Sellers-Langston reduced her hours after the timesheet incidents in August 2021. (*Id.* ¶ 18.) And she takes issue with the fact that she was not scheduled for work after

---

[3] Ajoloko states that Sellers-Langston falsely told her that her urinalysis tested positive for opioids. (Doc. 21 ¶ 20.) Jamas's position is that Ajoloko failed simply for her inability to provide a hair sample. (Doc. 39-1 ¶ 17.)

December 2021. (*Id.* ¶ 21.) The timesheets provided in the record show that Ajoloko regularly worked forty-hour weeks or greater during the Spring and most of the Summer of 2021 with one anomaly. (Doc. 39-3; Doc. 39-4.) Ajoloko did see a slight decrease in hours in the six weeks spanning from August 22, 2021 to the end of September,[4] although she did work two forty-hour weeks and serve her six-day suspension during this time. (Doc. 39-4 at 18–30.)

From the week of October 3 to her last day of work on December 5, 2021, Ajoloko's hours did significantly decrease, although she was scheduled to work two forty-hour weeks during this timeframe. (Doc. 39-4 at 32–50; Doc. 39-1 ¶ 23.) Importantly, in early October 2021, Ajoloko requested that she be exclusively assigned to a spotter position, of which there were no full-time positions available at that time. (Doc. 39-1 ¶ 18; Doc. 39-11.) Further, Ajoloko's other job posed scheduling difficulties, as Ajoloko was unavailable to work on Saturday nights and Sunday mornings.[5] (Doc. 39-1 ¶ 22; Doc. 39-11.) And Ajoloko had "called out last-minute for a shift in mid-October, creating concerns over whether she would even show for shifts." (Doc. 39-1 ¶ 22.)

---

[4] Ajoloko worked three thirty-two-hour weeks, two forty-hour weeks, and one twenty-four-hour week during this time. (Doc. 39-4 at 18–30.)

[5] While working at Jamas, Ajoloko also worked a second "permanent" job on Saturday nights and Sunday mornings. (Doc. 39-1 ¶ 22; Doc. 39-11.)

On or about December 10, 2021, Warrior Met informed Jamas that it was terminating their transportation contract after that week. (Doc. 39-1 ¶ 25.) Accordingly, all employees in similarly situated positions to Ajoloko were released. (*Id.*) Jamas maintained temporary employees for on and off security work at the Warrior Met property, but Ajoloko was not scheduled because she lacked an appropriate vehicle and due to Jamas's concerns about her professionalism. (*Id.* ¶ 26.) Similar transportation work became available in 2022, but Jamas did not ask Ajoloko to return to work. (*Id.* ¶ 28.)

Lastly, Ajoloko, in furtherance of her ADA claim, claims that on October 27, 2021, Sellers-Langston prevented her from using a cane. (Doc. 1-1 at 6; Doc. 21.) Ajoloko would occasionally bring a cane to work, but she never provided medical documentation. (Doc. 39-1 ¶ 20.) Further, on October 25, 2021, Ajoloko texted Sellers-Langston that she was not using her cane anymore and that she could run. (Doc. 39-10.)

Ajoloko filed a Charge of Discrimination with the EEOC on August 29, 2022. (Doc. 1-1 at 5.) Ajoloko filed this action in the Circuit Court of Tuscaloosa County on January 3, 2023. (Doc. 1-1 at 1.) Jamas subsequently removed. (Doc. 1.)

## II.   STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). The Court "must view all evidence most favorably toward the nonmoving party, and all justifiable inferences are to be drawn in the nonmoving party's favor." *Hoffman v. Allied Corp.*, 912 F.2d 1379, 1383 (11th Cir. 1990). The Court does not weigh the evidence as fact-finder; rather, it must "determin[e] whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 250 (1986).

When a litigant proceeds *pro se*, the Court construes their pleadings liberally. *See Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007). But "this leniency does not give [us] license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Williams, Scott & Assocs. LLC v. United States*, 838 F. App'x 501, 501 (11th Cir. 2021) (quoting *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014)).

## III.   ANALYSIS

In support of its Motion for Summary Judgment, Jamas raises several arguments. First, Jamas contends that Ajoloko's Title VII, ADA, and ADEA claims that are premised on conduct occurring prior to March 2, 2022 are time-barred. Second, Jamas argues that many of Ajoloko's allegations in support of her Title VII, ADA, and ADEA claims fall outside the scope of her EEOC charge and thus are

procedurally-barred. Third, Jamas asserts that Ajoloko's claims fail as a matter of law. Because the Court believes that Ajoloko's Title VII, ADA, and ADEA claims that are premised on conduct occurring prior to March 2, 2022 are time-barred, and that regardless all her claims fail on the merits, the Court does not address the second argument.

The Court notes that claims arising under § 1981 are not subject to the requirement that a plaintiff first exhaust her administrative remedies with the EEOC, and therefore for Jamas to be entitled to summary judgment on the § 1981 claim, it must show that Ajoloko fails on the merits. *See Green v. Elizir Indus., Inc.*, 152 F. App'x 838, 841 (11th Cir. 2005).

### A. AJOLOKO'S TITLE VII, ADA, AND ADEA CLAIMS PREMISED ON CONDUCT OCCURRING PRIOR TO MARCH 2, 2022 ARE TIME-BARRED.[6]

"Procedurally, a plaintiff must exhaust her administrative remedies with the EEOC before filing a complaint for discrimination under Title VII or the ADA" or the ADEA. *Stewart v. Jones Utility & Contracting Co., Inc.*, 806 F. App'x 738, 740 (11th Cir. 2020); *see also Anderson v. Embarq/Sprint*, 379 F. App'x 924, 926 (11th

---

[6] The Court further notes that Ajoloko did not respond to this argument in her response to Jamas's Motion for Summary Judgment. While the Court would generally perceive any argument in opposition to be abandoned, *Jones v. Bank of America, N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014), in an abundance of caution, the Court will construe Jamas's argument as opposed.

Cir. 2010).[7] To exhaust her administrative remedies, in a non-deferral state like Alabama, a plaintiff must "file a charge with the EEOC within 180 days of the alleged unlawful employment activity." *Freeman v. City of Riverdale*, 330 F. App'x 863, 866 (11th Cir. 2009) (citing 42 U.S.C. § 2000e–5(e)(1); *see Jordan v. City of Montgomery*, 283 F. App'x 766, 767 (11th Cir. 2008); 42 U.S.C. § 12117(a) (incorporating the procedural requirements of Title VII into the ADA); *Jones v. Dillard's, Inc.*, 331 F.3d 1259, 1263 (11th Cir. 2003) (citing 29 U.S.C. §  626) (explaining that ADEA claims are subject to the 180-day requirement).

The timely filing of an EEOC charge is a procedural requirement, not a jurisdictional prerequisite, and it is therefore subject to waiver, estoppel, and equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). However, because Jamas asserted failure to timely file an EEOC charge as a defense in its answer (Doc. 22 at 10) and because Ajoloko has presented no evidence that would give rise to an estoppel or equitable tolling argument, the Court concludes that whether Ajoloko has timely filed her EEOC charge is controlling.

"In determining whether claims are timely, courts must distinguish between allegations which charge discrete acts of discrimination or retaliation from allegations that charge repeated acts or events centering on discrimination,

---

[7] While opinions from the Federal Appendix are not binding on this Court, these opinions can be persuasive authority.

intimidation, and ridicule." *Freeman*, 330 F. App'x at 866. For instance, it is well-settled that termination, failure to hire or promote, work assignments, and retaliation claims are discrete acts. *See Stewart*, 806 F. App'x at 741 (citing *Nat'l Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)); *Freeman*, 330 F. App'x at 866 (citing *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 970 (11th Cir. 2008), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). These discrete, one-time employment events should put a plaintiff on notice that their claims were actionable, and thus are time-barred if they fall outside the 180-day window, even if they are related to acts that are not time-barred. *See E.E.O.C. v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir. 2002); *Morgan*, 536 U.S. at 113.

The latter type of allegations are called "continuing violations" and "[i]n some cases, . . . may extend the limitations period." *Mitchell v. Univ. of N. Ala.*, 785 F. App'x 730, 735 (11th Cir. 2019). If the plaintiff alleges a continuing violation, she must file the EEOC charge within 180 days of the last occurrence of the violation. *See Beavers v. Am. Cast Iron Pipe Co.*, 975 F.2d 792, 796 (11th Cir. 1992) (citing *Gonzalez v. Firestone Tire & Rubber Co.*, 610 F.2d 241, 249 (5th Cir. 1980)).

A hostile work environment claim is not subject to the continuing violations doctrine. *See Shields v. Fort James Corp.*, 305 F.3d 1280, 1281 (11th Cir. 2002) (citing *Morgan*, 536 U.S. 101). Rather, it is to be viewed "as a single unlawful

10

employment practice," *Shields*, 305 F.3d at 1281–82, and "if the smallest portion of that 'practice' occurred within the limitations period, then a court should consider [the hostile work environment claim] as a whole," *Stewart*, 806 F. App'x at 741.

As Ajoloko filed her EEOC charge on August 29, 2022, the Court may only consider allegations of discrete acts or continuing violations with a last occurrence on or after March 2, 2022. From the Court's review of the facts, Ajoloko has alleged several discrete acts that are time-barred: the cell phone occurring on August 8, 2021; the Covid test event occurring on August 10, 2021; the August 2021 time-sheet reprimands and suspension; the slight reduction in hours from August 22, 2021 to the end of September 2021; the September 2021 drug test; the larger reduction in hours from October 3 to December 5, 2021; and her ultimate release in employment after December 5, 2021. As Ajoloko last worked for Jamas in December 2021, any discriminatory conduct regarding Jamas's alleged refusal to allow her to use a cane during her employment, or discrimination in work responsibilities and assignments, *Davis*, 516 F.3d at 970, would have last occurred at that time. And to the extent Ajoloko asserts a hostile work environment claim, any hostile work environment would have ended on the last day of her employment in December 2021. *See Stewart*, F. App'x at 742.

The only event that is not time-barred is Jamas's ultimate decision not to ask her back to work on or after March 2, 2022. But in an abundance of caution, the

Court will evaluate whether claims premised on all the aforementioned events fail on the merits.

## B. ALL AJOLOKO'S CLAIMS FAIL ON THE MERITS.

### i. FIRST CLAIM FOR RELIEF (RACIAL DISCRIMINATION) AND SECOND CLAIM FOR RELIEF (DISCRIMINATION BASED ON AGE – DISPARATE TREATMENT)

Ajoloko's First Claim for Relief (Racial Discrimination) could only arise under Title VII and § 1981. With a few distinctions that are not present here,[8] claims brought pursuant to Title VII and § 1981 are analyzed under the same analytical frameworks. *See Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). Claims brought pursuant to the ADEA are also analyzed under those frameworks. *See Sims v. MVM, Inc.*, 704 F.3d 1327, 1333 (11th Cir. 2013). As the record contains no direct evidence of discrimination, the Court applies the *McDonnell Douglas* burden-

---

[8] One such distinction is that Title VII allows plaintiffs to prove discrimination by showing that the protected characteristic was a "motivating factor" for an adverse employment action. *See Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1236 (11th Cir. 2016) (citing 42 U.S.C. § 2000e-2(m)). The motivating factor framework is unique to Title VII: it is not available for claims brought pursuant to § 1981, or even for claims brought under the ADA or ADEA. *See Comcast Corp. v. Nat'l Assoc. of African-American Owned Media*, 589 U.S. 1011, 1014 (2020); *Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1193 (11th Cir. 2024); *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 174 (2009). However, even for Title VII claims, "a plaintiff cannot make only a 'passing reference to a mixed-motive theory' to sufficiently raise the issue." *Smith v. Vestavia Hills Bd. of Educ.*, 791 F. App'x 127, 130 (11th Cir. 2019) (quoting *Keaton v. Cobb County.*, No. 08–11220, 2009 WL 212097, at *10 (11th Cir. Jan. 30, 2009)). Ajoloko has not made even a passing reference to the motivating factor standard (Doc. 21), and thus has not sufficiently raised the issue. But even if she had raised the issue, she has not presented evidence sufficient to convince a jury by a preponderance of the evidence that her race was a "motivating factor" in Jamas's decisions. *Quigg*, 814 F.3d at 1239.

shifting framework and the convincing mosaic standard in analyzing the First and Second Claims for Relief. *See Jenkins v. Nell*, 26 F.4th 1243, 1249 (11th Cir. 2022).

"Under the *McDonnell Douglas* framework, the plaintiff bears the burden of establishing a prima facie case of race [or age] discrimination by demonstrating that: (1) he belongs to a protected class; (2) he suffered an adverse employment action; (3) he was qualified to perform the job in question; and (4) his employer treated 'similarly situated' employees outside his class more favorably. To establish the fourth prong, the plaintiff must present evidence of a comparator—someone who is 'similarly situated in all material respects.'" *Id.* (quoting *Lewis v. City of Union City*, 918 F.3d 1213, 1220–21, 1224). For an ADEA case specifically, the fourth prong requires the plaintiff to demonstrate that she was "replaced by or otherwise lost a position to a younger individual." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000). If the plaintiff makes a prima facie case, the burden shifts to the defendant to provide "a valid, non-discriminatory justification for the adverse employment action." *Tynes v. Fla. Dep't of Juv. Just.*, 88 F.4th 939, 944 (11th Cir. 2023). If the defendant provides this justification, the burden then shifts to the plaintiff to show the defendant's proffered reason is pretextual. *Id.*

"Aside from the *McDonnell Douglas* framework, an employee can still survive summary judgment by presenting . . . a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Jenkins*, 26

F.4th at 1250. A plaintiff can paint a convincing mosaic of discrimination "by pointing to evidence that demonstrates, among other things, (1) suspicious timing, ambiguous statements, or other information from which discriminatory intent may be inferred, (2) 'systematically better treatment of similarly situated employees,' and (3) pretext." *Id.* (quoting *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019)). But ultimately, the standard is "only whether the evidence permits a reasonable factfinder to find that the employer retaliated against the employee." *Berry v. Crestwood Healthcare LP*, 84 F.4th 1300, 1311 (11th Cir. 2023).

Ajoloko's discrimination allegations can be broken down into six groupings: 1) discriminatory work assignments and responsibilities; 2) the cell phone allegation; 3) the Covid test allegation; 4) the timesheet allegations; 5) the drug test allegations; and 6) the scheduling allegations, including her reduction in hours, ultimate release from employment, and Jamas's decision not to invite her back to work. The Court addresses each allegation in turn.

First, regarding Ajoloko's allegation that Sellers-Langston discriminatorily assigned work responsibilities and "routinely placed elderly, African-American drivers last in line to transport other workers and gave preference to Caucasian drivers" (Doc. 21 ¶ 14), her claim fails under *McDonnell Douglas* because she has not directed the Court to a comparator. Her reference to "Caucasian drivers" is insufficient. *See Humphrey v. Napolitano*, 517 F. App'x 705, 708–09 (11th Cir.

14

2013) (explaining that a plaintiff's general argument that he was "deprived of the legitimate employment opportunities that were being enjoyed fully by the younger White and Cuban team members" were insufficient because he did not point to any specific comparators); *Liu v. Univ. of Miami*, 138 F. Supp. 3d 1360, 1372 (S.D. Fla. 2015) ("The Plaintiff must identify a specific comparator for the fourth element—not conclusory statements that she was treated differently than members outside of her protected class." (citing *Woods v. Cent. Fellowship Christian Acad.,* 545 F. App'x. 939, 945 (11th Cir. 2013)).

Her work assignment claim likewise fails under the convincing mosaic standard, as the evidentiary record simply does not show that work assignments were assigned with discriminatory intent.[9] Other than Ajoloko's conclusory statement that responsibilities were assigned in a discriminatory manner and that preference was given to Caucasian drivers while elderly, African-American drivers were placed last in line, Ajoloko points to no other evidence. She does not identify the younger, Caucasian drivers who were allegedly given preference, nor does she ever refer to a specific instance where elderly, African-American drivers were placed last in line. For its part, Jamas outright denies that any preferential treatment happened. (Doc. 38 at 25–26.) Accordingly, Ajoloko has not painted a convincing mosaic.

---

[9] It is also noteworthy that the Eleventh Circuit generally disfavors work assignment claims because such claims usually strike at the business judgment of the employer. *See Kidd v. Mando*, 731 F.3d 1196, 1203–04 (11th Cir. 2013).

As to the cell phone allegation, Ajoloko has not satisfied her burden under *McDonnell Douglas* because she fails to point to a comparator, the refusal to allow her to retrieve her phone was not an adverse employment action, and because she has not adequately rebutted Jamas's non-discriminatory reason for its action. As with her discriminatory work assignment allegations, Ajoloko has not specifically identified a younger, Caucasian employee who was treated more favorably: she simply says that "Sellers regularly allowed Caucasian workers to leave the job site to get breakfast." (Doc. 21 ¶ 15.) As discussed above, this generic description is insufficient. *See Humphrey*, 517 F. App'x at 708–09. Additionally, Ajoloko is referring to two entirely different leave policies—that being the ability to leave the site for breakfast compared to the ability to leave the site to go into an active strike zone—that are really not comparable. Further, an adverse employment action is one resulting in a "serious and material change in the terms, conditions, or privileges of employment." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006). As Jamas employees were not even permitted to have cell phones on the buses (Doc. 39-1 ¶ 7 n.2), it is not clear how the refusal to allow Ajoloko to retrieve her phone would amount to an adverse employment action. And lastly, even if Ajoloko had made a prima facie case, Jamas has provided a legitimate reason for not allowing her to retrieve the phone—that being safety concerns due to the active labor

strike—which Ajoloko has not adequately rebutted. She merely states that Joey Bain, another Jamas employee, was sent to retrieve her phone and "[n]o one understood why [she] was not allowed to go." (Doc. 42 at 2.)

Any convincing mosaic argument regarding the phone incident also fails. Ajoloko has simply not directed the Court to any bits and pieces of evidence of discriminatory intent, such as suspicious statements or timing, comparators, or evidence of pretext. *See Jenkins*, 26 F.4th at 1250.

Regarding the allegations surrounding the Covid test, Ajoloko's claim fails under *McDonnell Douglas* for failure to specifically name a comparator. Once again, Ajoloko alleges that "Caucasian employees" were "routinely allowed to take paid time off to be tested for Covid." (Doc. 21 ¶ 16.) But she does not specifically identify a single comparator, and that is fatal to her claim. *See Humphrey*, 517 F. App'x at 708–09.

Ajoloko fares no better under the convincing mosaic theory. She provides no evidence of suspicious timing or statements, better treatment of comparators, or pretext. *See Jenkins*, 26 F.4th at 1250. She simply points to no evidence suggesting that her assignment with Benefield or the refusal to allow her to have paid time off for testing were racially motivated or ageist.

Now to the timesheet allegations. First, Ajoloko's claim under *McDonnell Douglas* fails because she has not specifically identified a comparator. *See*

*Humphrey*, 517 F. App'x at 708–09. As before, she refers to a "Caucasian employee" who she alleges served a paid suspension for sexual harassment,[10] which is an entirely different employment policy than the operative employment policy regarding the timesheet policy. Second, even if she did make a prima facie case, Jamas has offered a valid reason for the reprimand and suspension, namely that Ajoloko was noncompliant with its policies. Ajoloko has not disputed that she was noncompliant, and she does not successfully establish that Jamas's actions were a pretext for racial or age-related discrimination.

Similarly, Ajoloko's allegations surrounding the timesheet incidents do not satisfy the convincing mosaic standard. In viewing the evidentiary record as a whole, there is simply not evidence that any actions taken against Ajoloko in response to her failure to comply with the timesheets policy was based on her race or age. The pieces necessary to create a convincing mosaic are plainly absent.

As to the drug test allegations, Ajoloko has also not satisfied the *McDonnell Douglas* framework. First, she does not point to a specific comparator, as she only states that "[n]o one other than the three employees tested on that one occasion ha[d] been tested." (Doc. 21 ¶ 19.)[11] In fact, in a blow to her racial discrimination claims,

---

[10] Jamas denies that this suspension was paid. (Doc. 39-1 ¶ 15.)

[11] Jamas contends that it tested seventy-five employees. (Doc. 39-1 ¶ 16.)

she specifically states that another Caucasian employee was tested on the same date that she was. (*Id.*) Second, Ajoloko has not established that she suffered an adverse employment action, as "merely being subjected to a drug test does not constitute an adverse employment action" and she has not alleged that any adverse action was taken against her due to her failure of the test. *Yelling v. St. Vincent's Health Sys.*, No. 2:17-cv-1607-SGC, 2020 WL 7059450, at * 10 (N.D. Ala. Dec. 2, 2020). And third, even if Ajoloko had made a prima facie case, Jamas has offered a valid reason for the test: the requirement by its customer, Warrior Met, following the bus accident. Ajoloko has not successfully demonstrated that Jamas's reasoning was pretextual.

Ajoloko's drug-testing claim is also not actionable under the convincing mosaic theory. In addition to not demonstrating comparators or pretext, Ajoloko has not produced any evidence of suspicious statements or conduct that would demonstrate that the drug testing was racially motivated or ageist. Rather, as Ajoloko admits, Jamas tested both African-American and Caucasian employees.

Lastly, the Court considers Ajoloko's scheduling allegations, including her reduction in hours, ultimate release from employment, and Jamas's decision not to bring her back to work. In regard to her reduction in hours—both the slight reduction from August 22, 2021 through September 2021 and the more substantial reduction from October 2021 to December 2021—Ajoloko fails under *McDonnell Douglas*

because she does not name a specific comparator. Further, Ajoloko's slight reduction in hours from August 22, 2021 through September 2021 is partially explained by her six-day suspension. Jamas provides legitimate reasons for the substantial reduction from October 2021 to December 2021, that being her request for a position change where no full-time positions were available and her working availability due to her other non-Jamas jobs. Ajoloko does not rebut Jamas's proffered reasons.

Regarding Ajoloko's release from employment in December 2021 and Jamas's decision not to ask her back to work once positions became available, she likewise has not established a prima facie case under *McDonnell Douglas*. Regarding her initial release, Ajoloko has not identified a specific comparator. But even further, if she had made a prima facie case, Jamas has articulated a legitimate reason for her release: Warrior Met ended the transportation contract, thus ending the need for spotters. While Jamas maintained temporary employees for security, Ajoloko was not suited for that position. Ajoloko has not shown Jamas's reasons were pretextual. In terms of Jamas not asking Ajoloko to return to work in 2022, Ajoloko has not identified specific comparators who were asked to return. (Doc. 1-1.)

Jamas contends that it exercised its right in not asking her to return to work and that it similarly did not ask two Caucasian workers under forty years old to return. (Doc. 39-1 ¶ 28.) The Court construes Jamas's reasoning as being one of

business judgment. "[I]t is not the court's role to second-guess the wisdom of an employer's decisions as long as the decisions are not racially motivated [or ageist]." *Alexander v. Fulton County*, 207 F.3d 1303, 1341 (11th Cir. 2000), *overruled on other grounds by Manders v. Lee*, 338 F.3d 1304 (11th Cir. 2003). And based on the evidence in the record—such as Ajoloko's insubordination with the timesheets leading to reprimands and a suspension, concerns about her professionalism, and difficulty in scheduling her—Jamas had ample business reasons not to ask her to return. Ajoloko has further not shown pretext, especially concerning that other African-American employees over forty years old were asked to return while other Caucasian employees under forty years old were not asked to return. (Doc. 1-1; Doc. 39-1 ¶ 28.)

The Court further finds that none of the scheduling allegations paint a convincing mosaic of racial or age discrimination. In examining the totality of the evidence, there is simply no evidence suggesting that Jamas's scheduling decisions were racially motivated or ageist. Ajoloko has directed the Court to no suspicious or ambiguous statements or occurrences that would indicate Jamas's decisions were racially motivated or ageist. Rather, Jamas slightly reduced Ajoloko's hours, in conjunction with a six-day suspension and for which Ajoloko has cited no comparators; Jamas then more substantially reduced her hours in response to Ajoloko's own request to move to a spotter position and due to her own scheduling

limitations; Jamas released her from employment, like it did all other temporary employees in that position due to its contract ending; and Jamas did not ask her back to work for legitimate business reasons. This is not a convincing mosaic.

Further, to the extent Ajoloko has pled a substantive hostile work environment claim, she must establish: "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as [race or age]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1275 (11th Cir. 2002); *see Litman v. Secretary, of the Navy*, 703 F. App'x 766, 771 (11th Cir. 2017). For the work environment to be "sufficiently severe or pervasive," an "employer's actions 'must result in both an environment that a reasonable person would find hostile or abusive and an environment that the victim subjectively perceive[s] . . . to be abusive.'" *Tonkyro v. Secretary, Dep't of Veterans Affs.*, 995 F.3d 828, 837 (11th Cir. 2021) (quoting *Miller*, 277 F.3d at 1276 (quotation marks omitted). For the objective piece of the analysis, the Court evaluates "the totality of the circumstances, including: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere

offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Tonkyro*, 995 F.3d at 837 (quoting *Miller*, 277 F.3d at 1276).

Ajoloko has failed to meet her burden. First, while Ajoloko contends that she was harassed (Doc. 21 ¶ 26), she has not connected any perceived harassment to her race or age. Additionally, while she may subjectively believe that she was harassed, she has not satisfied the objective component. The instances of conduct that Ajoloko references—the work assignments, cell phone incident, Covid test incident, the timesheet allegations, the drug test incident, and the scheduling—were not severe, physically threatening, or objectively humiliating. A reasonable jury, viewing all the evidence, could not reasonably conclude that Ajoloko was subject to a hostile work environment.

### ii.   THIRD CLAIM FOR RELIEF (DISCRIMINATION BASED ON DISABILITY)

The ADA prohibits an employer from "discriminat[ing] against a qualified individual on the basis of disability" in regard to "hiring, advancement, discharge, compensation, training, and other terms, conditions, and privileges of h[er] employment." 42 U.S.C. § 12112(a). While Ajoloko's Complaint is devoid of much detail regarding how exactly she intends to prosecute an ADA claim against Jamas, the Court at least construes her Complaint as stating an ADA claim for failure to provide a reasonable accommodation related to her use of a cane.

"To establish a prima facie case of discrimination under the ADA, a plaintiff must show: (1) [s]he is disabled; (2) [s]he is a qualified individual; and (3) [s]he was subjected to unlawful discrimination because of [her] disability." *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007). A person is disabled under the ADA if: (1) she has "a physical or mental impairment that substantially limits one or more of the major life activities"; (2) she has "a record of such an impairment"; or she has been "regarded as having such an impairment." 42 U.S.C. § 12102(2). A person is a qualified individual if she is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position." 42 U.S.C. § 12111(8). "[U]nlawful discrimination includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability' unless doing so 'would impose an undue hardship' on the employer." *Beasley v. O'Reilly Auto Parts*, 69 F.4th 744, 754 (11th Cir. 2023) (quoting 42 U.S.C. § 12112(b)(5)(A)).

Jamas argues that Ajoloko has not sufficiently shown that she has a disability and that she was subject to unlawful discrimination because of her purported disability. The Court agrees. First, Ajoloko has alleged that she "has mobility problems which require her to walk with a cane at times" (Doc. 21 ¶ 11) and that on October 27, 2021 Sellers-Langston stated that she could not use her cane (Doc. 1-1). However, she provides no further information about her alleged disability. In fact,

to the contrary, the record contains a text message that is dated October 25, 2021, in which Ajoloko states that she is no longer using her cane and even brags that she can run. (Doc. 39-12.) Therefore, to the extent Ajoloko contends that her mobility issues "substantially limit" the life activity of walking, she has not presented sufficient evidence to create a genuine dispute of fact. And to the extent that she contends her mobility issues "substantially limit" the life activity of working, she has not shown that it "significantly restrict[ed] [her] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Shepard v. United Parcel Serv., Inc.*, 470 F. App'x 726, 729 (11th Cir. 2012) (*quoting Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1133 (11th Cir.1996)). In fact, there is no evidence in the record that her mobility issues ever affected her ability to perform any job at Jamas.

Further, there is no evidence in the record that Jamas ever "regarded" Ajoloko as having a disability. According to Jamas, Ajoloko would occasionally bring a cane to work, but she did not consistently use it. (Doc. 39-1 ¶ 20.) And further she never provided any medical documentation regarding her need for a cane. (*Id.*)

But even if Ajoloko did have a disability, "discrimination in the form of a failure to reasonably accommodate is actionable under the ADA only if that failure negatively impacts the employee's hiring, advancement, discharge, compensation, training, and other terms, conditions, and privileges of his employment." *Beasley*,

69 F.4th at 754 (first citing 42 U.S.C. § 12112(a); then citing *Holly*, 492 F.3d at 1263 n.17 (explaining that in a failure-to-accommodate claim, a plaintiff must establish (1) her employer failed to reasonably accommodate their disability and (2) this failure led to an "adverse employment decision")). Here, Ajoloko has not demonstrated any adverse employment decision related to Jamas's failure to allow her use of a cane. *See Beasley*, 69 F.4th at 756 (explaining that a plaintiff had not demonstrated any adverse consequences from his employer's failure to provide him with an interpreter during his forklift training or during a company picnic because the employee completed the training, did not operate a forklift in his job anyway, and his wife interpreted for him at the picnic). She merely alleges that she was not allowed to use a cane, without any mention as to how that impacted her terms, conditions, or privileges of employment.

Accordingly, even assuming Ajoloko's failure-to-accommodate ADA claim was not time-barred, she has not established that she is entitled to relief under the ADA.

Additionally, to the extent that Ajoloko has brought a general disability discrimination claim related to Jamas's scheduling, including the reduction in her hours and failure to schedule her after December 2021, or anything else, those claims are likewise deficient. When a plaintiff does not present direct evidence of disability discrimination, as Ajoloko has not done here, courts evaluate disability

discrimination claims by using the *McDonnell Douglas* burden-shifting framework or the convincing mosaic standard. *See Akridge v. Alfa Ins. Cos.*, 93 F.4th 1181, 1191, 1197 (11th Cir. 2024).

The Court starts with *McDonnell Douglas*. As outlined above, to make a prima facie case, a plaintiff must show: "(1) she has a disability; (2) she is a qualified individual under the ADA; and (3) the employer discriminated against her 'on the basis of disability.'" *Akridge*, 93 F.4th at 1191 (quoting *Beasley*, 69 F.4th at 754). For the third prong, "a plaintiff alleging disparate treatment" must "prove that [s]he was treated less favorably than a similarly situated, non-disabled person." *Sailboat Bend Sober Living, LLC v. City of Fort Lauderdale*, 46 F.4th 1268, 1275 (11th Cir. 2022). As discussed above, Ajoloko has not met her burden of establishing that she has a disability. Further, she has not directed the Court to any comparators without a disability who were treated more favorably. In discussing employees who she perceives to have been treated more favorably, whether that be in scheduling or otherwise, she never specifies whether those individuals are non-disabled. Accordingly, Ajoloko has not met her prima facie burden under *McDonnell Douglas*.

Ajoloko has similarly not painted a convincing mosaic of discrimination. As outlined above, "[a] plaintiff's mosaic may be made up of, among other things, (1) 'suspicious timing, ambiguous statements . . . , and other bits and pieces from which

an inference of discriminatory intent might be drawn'; (2) systemically better treatment of similarly situated employees; and (3) evidence that the employer's justification is pretextual." *Akridge*, 93 F. 4th at 1198 (quoting *Lewis v. City of Union City*, 934 F.3d 1169, 1185 (11th Cir. 2019)). Here, there is no suspicious timing or ambiguous statements indicating that a discriminatory act was taken against Ajoloko due to her disability, Ajoloko has not directed the Court to any employees who were treated better, and the record is devoid of evidence of pretext. Viewing the evidence in its totality, Ajoloko has not shown disability discrimination.

Lastly, to the extent Ajoloko asserts a hostile work environment claim under the ADA, that claim is likewise deficient. The Eleventh Circuit has not decided whether a hostile work environment claim exists under the ADA. *See Cooper v. CLP Corp.*, 679 F. App'x 851, 853 n.2 (11th Cir. 2017). But even assuming such a claim exists, a plaintiff must plead: "(1) that [s]he belongs to a protected group; (2) that [s]he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as [disability]; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability." *Miller*, 277 F.3d at 1275.

Here, Ajoloko has not established a single element of an ADA hostile work environment claim. She has not established that she belongs to a protected group, i.e. that she has a disability; that she was subjected to harassment; that the harassment was due to her disability; that the harassment was severe or pervasive, at least as an objective matter; or that Jamas is responsible for any such harassment. Other than her mere reference to the fact that she has mobility problems and that Sellers-Langston told her that she could not use a cane, Ajoloko does not connect her mobility issues to her treatment in the work environment in any other way. She does not reference any disparaging or hostile remarks that Sellers-Langston made regarding her disability, nor does she reference any other harassing behavior related to her disability. Therefore, to the extent Ajoloko pleads an ADA hostile work environment claim, it fails.

### iii.   FOURTH CLAIM FOR RELIEF (RETALIATION)

While Ajoloko does not specify what claims she brings under her "retaliation" count, in an abundance of caution, the Court evaluates whether she has established a retaliation claim under Title VII, § 1981, the ADA, or the ADEA. Under each statutory scheme, a plaintiff relying on circumstantial evidence may establish a retaliation claim through an iteration of the *McDonnell Douglas* framework or the convincing mosaic standard. *See Davidson v. Chspsc LLC*, 861 F. App'x 306, 311 (11th Cir. 2021); *Berry*, 84 F.4th at 1307; *Delk v. United Parcel Serv., Inc.*, NO.

1:18-CV-5635, 2022 WL 1398150, at *8, *17 (N.D. Ga. Jan. 22, 2022). Further, retaliation claims can be based on discrete acts or the creation of a hostile work environment.[12] *See Tonkyro*, 995 F.3d at 836.

Here, Ajoloko claims she was retaliated against "[b]ecause of [her] reports to Wilson and the EEOC." (Doc. 21 ¶ 51.) The Court assumes that Ajoloko's "reports to Wilson" refer to her report to Wilson after she was removed from the property following the timesheet incidents and her complaint to Wilson following the drug test. (Doc. 21 ¶¶ 17, 21.) As the cell phone event, the Covid test event, and the timesheet events occurred before Ajoloko made any formal complaints,[13] the Court also assumes that the alleged retaliatory acts resulting from the reports and the EEOC charge were the discriminatory work assignments, the drug test, discriminatory scheduling, and the creation of a hostile work environment.

In evaluating retaliation claims under the *McDonnell Douglas* framework, "the employee must establish a prima facie case of retaliation by proving that she engaged in statutorily protected conduct; she suffered an adverse employment

[12] For the purposes of this opinion, the Court assumes that a retaliatory-hostile-work-environment claim exists for all four statutory schemes.

[13] However, to the extent Ajoloko argues that her suspension gives rise to a retaliation claim, the Court notes that her claim fails under *McDonnell Douglas* because Jamas has offered a legitimate reason for its action, namely Ajoloko's insubordination with the time sheets, which Ajoloko has not rebutted. Further, Ajoloko has not satisfied the convincing mosaic standard because she has not presented any evidence of retaliation.

action; and a causal relation exists between the two events." *Berry*, 84 F.4th at 1307. "A 'close temporal proximity' between the protected expression and an adverse action is sufficient circumstantial evidence of a causal connection for purposes of a prima facie case." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (citing *Olmsted*, 141 F.3d at 1460). If the employee makes the prima facie case, the employer must offer a legitimate reason for its action, which the employee may combat by showing pretext. *Id.* The convincing mosaic framework remains the same for retaliation claims, that is the Court must simply determine "whether the evidence permits a reasonable factfinder to find that the employer retaliated." *Berry*, 84 F.4th at 1311.

First, the Court evaluates whether Ajoloko's complaints resulted in retaliation in the form of discriminatory work assignments. Under the *McDonnell Douglas* framework, her claim fails because she has not presented any evidence that the discriminatory work assignments happened and therefore she has not shown an adverse employment action. Further, she has not demonstrated a causal connection, as she does not even discuss when the alleged discriminatory assignments occurred. She has likewise not painted a convincing mosaic due to the utter lack of evidence of discriminatory retaliation.

In terms of the drug test, Ajoloko has also not satisfied *McDonnell Douglas* because, as previously discussed, the drug test was not an adverse employment

action. But even if she had, Jamas provided a valid reason for the drug test, i.e. Warrior Met's request in light of the bus accident, and Ajoloko has not rebutted this reason as being pretextual. She further has not demonstrated a convincing mosaic because she has not presented evidence of any suspicious activity that would suggest that Jamas and Warrior Met orchestrated a company-wide drug test in retaliation for Ajoloko's complaints.

Now to the scheduling, including her reduction in hours, ultimate release from employment, and Jamas's decision not to bring her back to work. Even if Ajoloko had made a prima facie case under *McDonnell Douglas*, as discussed above, Jamas has articulated legitimate reasons for its actions and Ajoloko has not produced evidence that Jamas's actual reasons were retaliatory. Further, the lack of evidence of retaliatory intent behind the scheduling fails to show a convincing mosaic.

Finally, on to any retaliation hostile work environment claim. Unlike a substantive hostile work environment claim, where a plaintiff must show that the workplace is "severe or pervasive," a plaintiff in a retaliatory hostile work environment claim need only show that the employer's conduct "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford*, 529 F.3d at 974 (quoting *Burlington*, 548 U.S. at 68). Regardless, Ajoloko has not shown that Jamas created a hostile work environment in retaliation for her complaints, even under this more lenient standard. All of the

conduct Ajoloko describes taking place after her complaints—the drug test, the scheduling, etc.—were all normal business behaviors. If anything, Jamas's willingness to accommodate Ajoloko's position change and the communications exchanged between Ajoloko and Sellers-Langston (Doc. 42 at 8–5) demonstrate that the work environment was professional. Accordingly, to the extent Ajoloko raises a retaliatory hostile work environment claim, it fails.

## IV.   CONCLUSION

For the reasons discussed above, Jamas's Motion for Summary Judgment is due to be granted. The Court will enter an Order consistent with this Memorandum of Opinion.

**DONE** and **ORDERED** on April 25, 2024.

L. Scott Coogler
United States District Judge

215755